UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO.
12-10293-DJC

UNITED STATES OF AMERICA

v.

JOHN PERRY, JOSEPH BURHOE,
JAMES DEAMICIS and THOMAS FLAHERTY

## ORDER ON DEFENDANTS'
## JOINT MOTION FOR A BILL OF PARTICULARS

June 19, 2013

DEIN, M.J.

## I.  INTRODUCTION

The defendants in this 33-count Indictment, John Perry, Joseph Burhoe, James

DeAmicis, and Thomas Flaherty, were members of the International Brotherhood of

Teamsters, Teamsters Local 82 (the "Union" or "Local 82"), a union for employees in the

moving and trade show industries.  They have brought a motion for a bill of particulars

seeking further details in connection with Counts One through Nineteen of the

Indictment.  Therein, they are charged with racketeering – involving 16 predicate acts of

extortion or attempted extortion – in violation of 18 U.S.C. §§ 1961(1) and 1961(5)

(Count One), racketeering conspiracy  in violation of 18 U.S.C. § 1962(d) (Count Two),

conspiracy to extort in violation of 18 U.S.C. § 1951 (Count Three), and extortion in

violation of 18 U.S.C. §§ 1951 and 2 (Counts Four through Nineteen).  The defendants

contend that considerably more detail is needed for them to adequately prepare a defense, while the government contends that the Indictment is sufficiently detailed, especially when viewed in connection with the discovery that has been produced, and a meeting that the government and an investigating agent held with defense counsel to review the basis for each of the charges.

For the reasons detailed herein, the defendants' Motion for Bill of Particulars (Docket No. 90) is ALLOWED IN PART and DENIED IN PART as provided below.

## II.   STATEMENT OF FACTS

According to the Indictment, the defendants were part of a group, known as the "Perry Crew," that exerted control over the Union for their own purposes.  (Indictment ¶ 8).  As an overview, the government has alleged as follows:

> The PERRY Crew exerted control over Local 82 through intimidation and fear of physical and economic harm.  The purpose of the PERRY Crew was to generate money for themselves, their friends and family members.  Among the methods and means by which the PERRY Crew furthered its objectives was through multiple acts of extortion, including the actual and threatened use of physical violence, and the inducement of fear of financial and economic injury on the members of Local 82 and on various business entities throughout Boston.  These business entities included hotels, event planners, catering companies, pharmaceutical companies, hospitals, music entertainment companies, and non-profit organizations, none of which had collective bargaining agreements with Local 82.  The PERRY Crew threatened to disrupt the business of these entities by picketing and other means, sometimes just hours before an event was to take place, if these entities did not accede to the PERRY Crew's wrongful demand for imposed, unwanted, unnecessary and superfluous jobs for themselves, their friends and family members, some of whom were not union members.  The imposed, unwanted, unnecessary and superfluous jobs the PERRY Crew demanded resulted in

payments to the member of the PERRY Crew and their friends and family, without contributions being made to the Benefit Fund.  The PERRY Crew also used threats of physical and economic harm to deprive the members of Local 82 of their rights under the LMRA, including their right to meet and assemble freely with other members and to express any views, arguments or opinions concerning such organization's affairs, their right to institute an action in any court or to appear as a witness in any judicial proceeding, and their right to vote for or otherwise support the candidate or candidates of their choice in any election of union officers.  These acts perpetrated upon the members of Local 82 included the assault of John Doe A, a critic of PERRY; the assault of John Doe B, who had filed a grievance against Local 82; the intimidation of John Doe C for having appeared as a witness in a judicial proceeding; and the stationing of the PERRY Crew and a police officer, at the entrance to the union hall, to prevent certain members of Local 82 from voting on a proposed contract ratification with a major employer.

(Indictment ¶ 8).

With respect to the specific charges of the Indictment, Count One – racketeering – contains 16 predicate acts called "racketeering acts."  Act 1 alleges a conspiracy to extort and it apparently incorporates all the other specific predicate acts.  Similarly, Count Two of the Indictment charges a racketeering conspiracy and Count Three charges a conspiracy to extort.  These conspiracy Counts also rely on the specific predicate acts contained in Count One.  Counts Four through Nineteen of the Indictment, which charge extortion, repeat the predicate acts found in Count One.  For clarity, therefore, this court will cite to the allegations as described in the predicate acts of Count One.

The specific charges of the Indictment can be grouped as follows.

<u>Count One: Racketeering Acts 1-11</u>

As noted above, predicate act 1 is for conspiracy.  Racketeering acts 2-11 are for extortion or attempted extortion of a specific company on either a specific date or during a specified period of time.[1]  The relevant language of each of these acts is substantially identical, with only the date, the defendant(s) involved, and the name and type of company changing.  Thus, in relevant part each racketeering act is described as follows:

> In or about September 2008 and continuing through September 2010, in Boston, and elsewhere within the District of Massachusetts, defendant JOSEPH BURHOE, together with others known and unknown to the Grand Jury ... obtained and attempted to obtain property from Company A, an event producer, to wit: money to be paid as wages for imposed, unwanted, and unnecessary and superfluous services; with the consent of Company A, its officers and other agents, which consent was induced by the wrongful use of fear of economic and physical harm to Company A and others, in order to obtain wages for such imposed, unwanted, and unnecessary and superfluous services for themselves, their friends and family members, in violation of Title 18, United States Code, Sections 1951 and 2.

(Count One: Racketeering Act 2).  Although the companies are identified only by letter in the Indictment, the names of the companies have been provided to defense counsel.  In addition, the government has represented that the identity of any persons "known to the government or the Grand Jury" who allegedly acted with the named defendant(s) has been provided to the defendants.

---

[1]  These predicate acts are factually identical to Counts Four through Thirteen of the Indictment.

During oral argument, the defendants identified the following as being the information they believe is most critical to their understanding of the charges against them (labeled as listed in their motion):

d)      the nature and form of each wrongfully induced consent;

e)      the identity of each individual whose consent was wrongfully induced while acting on behalf of each company;

f)      the date and place where such consent was given;

g)      the nature, time, manner and place of the threats;

h)      who made the threats; and

i)      to whom the threats were made.

(Docket No. 90 at Request ¶ 1).

The government has declined to identify the individuals from the companies who were involved on the basis that "this is essentially a request for an early witness list." (Docket No. 83 at 1).  In addition, the government has expressed concern for the safety of the individuals whose consent was allegedly wrongfully induced and to whom the threats were allegedly made.  (Docket No. 95 at 1(e) & 1(i)).  In support of this position the government relies on the defendants' criminal records as provided during the detention hearings, and the charges of violence in the Indictment.  There is no dispute, however, that the defendants have complied with their conditions of release as ordered by this court, including an order that they have no contact with any witnesses or potential

witnesses identified by the government.[2]  The government has also declined to provide the additional information requested on the grounds that the information provided in the Indictment is sufficient.

Count One: Racketeering Acts 12-16

Racketeering act 12 is entitled "Conspiracy to Extort - Manipulation of Contract Ratification Votes."[3]  Therein, it is alleged that between in or about March 2009 and July 2009 all of the defendants conspired to deprive the Union members of their rights to "(1) wages and employee benefits which Local 82 members would have obtained but for the defendants' wrongful conduct; and (2) the rights of Local 82 members to democratic participation in the affairs of their labor organization as guaranteed by the LMRDA . . . ." Specifically, it is charged that:

> the defendants and their co-conspirators arbitrarily denied certain members of Local 82 the right to attend meetings and vote on the ratification of a 2009 trade show collective bargaining agreement, through the wrongful use of actual and threatened force and fear of economic and physical harm to these Local 82 union members, in order to have a contract approved that would be beneficial to the defendants, their friends and family members.

(Count One, Racketeering Act 12a).

---

[2]  Apparently the government has limited that list to union members and has not included representatives of businesses who were allegedly extorted.

[3]  This is factually identical to Counts Fourteen and Fifteen of the Indictment.

Racketeering acts 13-16 involve specific allegations of extortion with respect to union members, including John Does A, B, and C, on specific dates.[4]  The defendants have been provided with the identity of these individuals and all related police reports. Since, as discussed <u>infra</u>, such discovery obviates the need for further details in the Indictment, these counts will not be discussed further.

With respect to racketeering acts 12-16, during oral argument, the defendants identified the following as the information they believe to be most critical to their understanding of the charges against them (labeled as listed in their motion):

d)      the identity of the members of Local 82 who were denied rights;

e)      the identity of those who obtained those rights[;]

f)      the time, place and nature of the denials;

g)      the nature and form of each wrongfully induced consent and the date and place where such consent was given;

h)      the identity of each consenting individual, other than the specified John Doe;

i)      the nature, time, manner, and place of the threats;

j)      who made the threats; and

k)      to whom the threats were made.

(Docket No. 90 at Request ¶ 2).  In response, the government has stated that all the members of Local 82 were denied their rights, the defendants obtained the rights, the

---

[4]  These are factually identical to Counts Sixteen through Nineteen of the Indictment.

identity of any other consenting individuals was unknown, and that the information as to whom the threats were made was stated in the Indictment (presumably the John Does) and amplified in discovery.  (See Docket No. 95).  The government declined to provide additional information about the nature and form of each wrongfully induced consent or the nature, time, manner and place of the threats.  (Id.).

Additional facts will be provided below where appropriate.

## III.  DISCUSSION

### A.   Legal Standard for Bills of Particulars

A bill of particulars is not a tool of discovery, and its purpose is not to obtain disclosure of evidence, witnesses to be offered at trial, or the government's legal theories. See United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985); United States v. Mannino, 480 F. Supp. 1182, 1185 (S.D.N.Y. 1979); see also United States v. Jones, 678 F. Supp. 1302, 1304 (S.D. Ohio 1988) (citing United States v. Kilrain, 566 F.2d 979 (5th Cir.), cert. denied, 439 U.S. 819, 99 S. Ct. 80, 58 L. Ed. 2d 109 (1978)).  Rather, its purpose "is to provide the accused with detail of the charges against him where necessary to enable him to prepare his defense, to avoid surprise at trial, and to protect against double jeopardy."  United States v. Paiva, 892 F.2d 148, 154 (1st Cir. 1989), and cases cited.  See also United States v. Eirby, 262 F.3d 31, 37-38 (1st Cir. 2001) ("In general, an indictment is sufficient if it specifies the elements of the offense charged, fairly apprises the defendant of the charge against which he must defend, and allows him to contest it without fear of double jeopardy.").

Whether – and to what extent – a bill of particulars should be granted is determined on the basis of the facts and circumstances presented in each case, and is within the discretion of the trial court.  United States v. Leach, 427 F.2d 1107, 1110 (1st Cir. 1970), cert. denied, 400 U.S. 829, 91 S. Ct. 95, 27 L. Ed. 2d 59 (1970); United States v. Abreu, 952 F.2d 1458, 1469 (1st Cir. 1992).  When considering a defendant's request for a bill of particulars, a court may consider such factors as the complexity of the charges, the clarity of the indictment, and the discovery and other information available to the defendant.  United States v. Walker, 922 F. Supp. 732, 739 (N.D.N.Y. 1996) (citing United States v. Diaz, 675 F. Supp. 1382, 1390 (E.D.N.Y. 1987)).

"[I]ndictments need not be infinitely specific," but need only "elucidate[] the elements of the crime, enlighten[] a defendant as to the nature of the charge against which she must defend, and enable[] her to plead double jeopardy in bar of future prosecutions for the same offense."  United States v. Sepulveda, 15 F.3d 1161, 1192 (1st Cir. 1993), cert. denied, 512 U.S. 1223, 114 S. Ct. 2714, 129 L. Ed. 2d 840 (1994).  Thus, motions for bills of particulars "need be granted only if the accused, in the absence of a more detailed specification, will be disabled from preparing a defense, caught by unfair surprise at trial, or hampered in seeking the shelter of the Double Jeopardy Clause."  Id. at 1192-93, and case cited.  However, where, as here, the defendants are charged with a racketeering offense, there may be a greater need for details in light of the broad scope of the charges.  See United States v. Asselin, No. CRIM 04-30033-MAP, 2005 WL 2365326, at *2 (D. Mass. Sept. 9, 2005) (court allows bill of particulars in RICO case).

As the court held in <u>United States v. Davidoff</u>, 845 F.2d 1151 (2d Cir. 1988), "[w]ith the wide latitude accorded the prosecution to frame a charge that a defendant has 'conspired' to promote the affairs of an 'enterprise' through a 'pattern of racketeering activity' comes an obligation to particularize the nature of the charge to a degree that might not be necessary in the prosecution of crimes of more limited scope." <u>Id.</u> at 1154.

A defendant seeking particularization "has the burden of showing by brief, affida-vit or otherwise that nondisclosure would lead to prejudicial surprise or the obviation of opportunities for meaningful defense preparation." <u>United States v. Rogers</u>, 617 F. Supp. 1024, 1027 (D. Colo. 1985); <u>see</u> <u>also</u> <u>Sepulveda</u>, 15 F.3d at 1192-93.  A defendant will not be prejudiced if "normal investigation [will] disclose[] the further information they require[]." <u>Leach</u>, 427 F.2d at 1110.  Moreover, bills of particulars are unnecessary when the information sought is available from other sources.  <u>See</u>, <u>e.g.</u>, <u>United States v. Bortnovsky</u>, 820 F.2d 572, 574 (2d Cir. 1987) (noting that generally bills of particulars are inappropriate when the information sought is available "in the indictment or some acceptable alternate form"), and cases cited.  Applying these principles to the instant case compels the conclusion that while some more particularization is appropriate, it is not as broad as the defendants have requested.

**B.     <u>Count One: Racketeering Acts 1-11</u>**

Simply put, by racketeering acts 1-11, the defendants are charged with extorting and attempting to extort benefits for the Perry Crew, from companies with whom the Union did not have contracts, by requiring (or demanding) that the companies hire them

for "unwanted, unnecessary and superfluous jobs."  The parties agree that there has been no production of Jenks material, police reports, witness statements or the like in connection with these charges.

The generality of the Indictment makes it impossible for the defendants to identify specific interactions which form the basis of the charges against them.  Moreover, unless it is the government's contention that any and all services performed by the Perry Crew for these companies were the result of extortion, and that any and all communications the defendants had with any representatives of these companies were in furtherance of an unlawful scheme, the defendants cannot by this Indictment distinguish between legitimate and allegedly illegitimate communications and employment.[5]  Consequently, some further details are required.

Where, as here, the wrongful conduct is evidenced by verbal communications, a defendant may, *inter alia*, seek "to demonstrate that the conduct which allegedly amounted to the communication of threats never took place, that a communication did take place but conveyed no threat, or that the meaning of an ambiguous communication has been misconstrued by the grand jury."  United States v. Tomasetta, 429 F.2d 978, 980

---

[5]  The defendants also contend that more specifics are necessary because not all of the conduct complained of may be actionable.  See, e.g., United States v. Enmons, 410 U.S. 396, 400-401, 93 S. Ct. 1007, 1010, 35 L. Ed. 2d 379 (1973) (while Hobbs Act applies "where union officials threatened force or violence against an employer in order to obtain personal payoffs, and where unions used the proscribed means to exact 'wage' payments from employers in return for 'imposed, unwanted, superfluous and fictitious services' of workers[,]" it "does not apply to the use of force to achieve legitimate labor ends").  The merits or details of such legal arguments, which presumably will be presented in a motion to dismiss, are beyond the purview of the issues presently before this court.

(1st Cir. 1970). If, however, "the location, time, and object of the communication are specified only in the most general terms or not at all," a defendant's ability to make "an adequate preparation for trial" is significantly compromised. Id. Additionally, where an indictment is vague, "it is possible, however unlikely, for a prosecutor to obtain a conviction based wholly on evidence of an incident completely divorced from that upon which the grand jury based its indictment. The prosecution may not have the power 'to roam at large' in this fashion." Id. Finally, as the Tomasetta court recognized in granting a bill of particulars, "no one factor is determinative. The failure to specify the means by which the alleged threats were communicated need not, of itself, be fatal. The failure to specify with greater precision the location of the alleged offense would surely not have given rise to this result were sufficient additional facts averred. And even the failure to name the victim, as serious a handicap to the defense as that on occasion may be, might not alone have led to this result. These factors, however, when taken together, made it unfair to require the defendant to answer this charge." Id. at 980-81 (internal citations and footnote omitted).

Applying these principles to the instant case, the following additional information should be provided for racketeering acts 2-11 and the corresponding Counts of the Indictment:

    1.     the dates on which the threats[6] were allegedly made;

---

[6] By "threats," the court means the statements and/or conduct which form the government's contention that the named defendant(s) "induced" the company(ies)'s consent "by the wrongful

2.      the place where the threats were allegedly made; and

3.      the nature and substance of the alleged threats.

In this court's view, this additional information will be sufficient to enable the defendants to prepare their defenses, avoid surprise at trial and protect against double jeopardy.  See Paiva, 892 F.2d at 154.  The Indictment sufficiently identifies the property at issue ("imposed, unwanted, and unnecessary and superfluous services"), and the persons who were to benefit (the named defendants and their friends and family members).  In light of the identification of the companies involved, and the date, place, nature and substance of the alleged threats, no further identification of the alleged victims is necessary.  This court agrees that such further identification would basically be an early identification of the government's witness list, and the timing of such disclosure is best left to the District Judge when the trial schedule is more defined.

C.      **Count One: Racketeering Acts 12-16**

With respect to racketeering acts 12-16 and the corresponding Counts of the Indictment, the defendants have been provided with the identity of John Does A, B, and C and all related police reports.  This is sufficient to satisfy the government's disclosure obligations and prevent harm to the defendants.  Consequently, no further details are needed with respect to acts 13-16.  See Bortnovsky, 820 F.2d at 574.

---

use of fear of economic and physical harm[.]"

To the extent that racketeering act 12 is broader than the allegations in acts 13-16, further details are necessary.  As written, the charge covers a broad period of time (March 2009 through July 2009), and only refers to the location, time, and substance of the challenged statements and conduct in the most general of terms.  Therefore, with respect to racketeering act 12, the government shall provide the following information (to the extent that the act refers to events other than those in acts 13-16):

1.    the identity of the "certain members of Local 82" who were denied the right to attend meetings and vote;

2.    the dates on which the threats were allegedly made;

3.    the place where the threats were allegedly made; and

4.    the nature and substance of the alleged threats.

"Threats" are defined as specified above.  See note 6, supra.  Again, the court finds this information, coupled with the information already provided by the government, to be sufficient to permit the defendants to adequately prepare for trial, avoid surprise and protect against double jeopardy.

## IV.  CONCLUSION

For all the reasons detailed herein, the defendants' Joint Motion for a Bill of Particulars (Docket No. 90) is ALLOWED IN PART and DENIED IN PART.  Within fourteen (14) days of the date of this Order, the government shall provide the following information for Count One: Racketeering Acts 2-11 and the corresponding Counts of the Indictment:

1.      the dates on which the threats[7] were allegedly made;

2.      the place where the threats were allegedly made; and

3.      the nature and substance of the alleged threats.

Similarly, within fourteen (14) days of the date of this Order, the government shall

provide the following information for Count One: Racketeering Act 12 (to the extent that

the act refers to events other than those in acts 13-16) and the corresponding Counts of

the Indictment:

1.      the identity of the "certain members of Local 82" who were denied the right
        to attend meetings and vote;

2.      the dates on which the threats were allegedly made;

3.      the place where the threats were allegedly made; and

4.      the nature and substance of the alleged threats.

SO ORDERED

    / s / Judith Gail Dein               
Judith Gail Dein
U.S. Magistrate Judge

---

[7]  By "threats," the court means the statements and/or conduct which form the government's
contention that the named defendant(s) "induced" the company(ies)'s consent "by the wrongful
use of fear of economic and physical harm[.]"