## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                          )
                                          )
**UNITED STATES**                         )
                                          )
**v.**                                    )
                                          )          **Criminal Action No. 12-10293-DJC**
**JOHN PERRY,**                           )
**JOSEPH BURHOE,**                        )
**JAMES DEAMICIS and**                    )
**THOMAS FLAHERTY,**                      )
                                          )
          **Defendants.**                 )
                                          )
_____ )

## MEMORANDUM AND ORDER

**CASPER, J.**                                                    **August 1, 2014**

## I.        Introduction

The United States has charged John Perry, Joseph Burhoe, James Deamicis and Thomas

Flaherty ("Defendants") in an indictment alleging a racketeering conspiracy, in violation of 18

U.S.C. § 1961 *et seq.*; extortion, in violation of 18 U.S.C. § 1951; mail fraud, in violation of 18

U.S.C. § 1341; theft of property, in violation of 18 U.S.C. § 641; and prohibitions relating to

certain persons holding office, in violation of 18 U.S.C. § 504.  D. 1.  Defendants have moved to

dismiss Racketeering Acts 12-16 and Counts 14-19 of the indictment, or in the alternative, for a

bill of particulars relating to these charges.  D. 174.  Burhoe (D. 175), Flaherty (D. 180) and

Deamicis (D. 182) have moved for severance of various counts of the indictment.  Defendants

have also moved for early disclosure of Jencks material.  D. 176.  For the reasons stated below,

the Court DENIES the motion to dismiss, ALLOWS IN PART and DENIES IN PART the

motions to sever and DENIES the motion for early disclosure of Jencks material.

## II.     Factual Background

The Court presumes the allegations of an indictment to be true for the purposes of assessing its sufficiency.  United States v. Dunbar, 367 F. Supp. 2d 59, 60 (D. Mass. 2005); United States v. Bohai Trading Co., Inc., 45 F.3d 577, 578 n.1 (1st Cir. 1995).  Applying this rubric, the Court recites the relevant facts as follows:

### A.     Background Relating to the Racketeering Conspiracy

The International Brotherhood of Teamsters ("IBT") Local 82, Furniture and Piano Moving, Furniture Store Drivers Helpers, Warehousemen and Packers ("Local 82") was a labor organization that represented employees in the moving and trade show industries.  D. 1 ¶ 1.  Local 82 was merged into Teamsters Local 25 at the end of 2011.  Id. ¶ 2.  Local 82 was a "labor organization" within the meaning of 29 U.S.C. § 402(i).  Id. ¶ 3.  It negotiated and administered collective bargaining agreements with employers.  Id. ¶ 5.  Local 82 also established savings and investment funds for employees (the "Benefit Funds"), which provided, inter alia, retirement benefits and medical coverage.  Id.

Because Local 82 was a labor organization as defined by the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 402(i), its members were guaranteed certain rights and privileges.  Id. ¶¶ 3-4.  These included, but were not limited to, "equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting," 29 U.S.C. § 411(a)(1), "the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting," 29 U.S.C. § 411(a)(2), and "the right of any member

of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding," 29 U.S.C. § 411(a)(4).

Each of the Defendants (identified in the indictment as the "Perry Crew") were members of Local 82; Perry was Secretary-Treasurer of Local 82 and at times was a trustee of the Benefit Funds and Director of Trade Shows and Convention Centers for the IBT, while Burhoe, Deamicis and Flaherty were all representatives and/or de facto representatives of Local 82. Id. ¶¶ 6-8. The indictment alleges that Defendants used their roles in Local 82 to exert control over the organization through intimidation and fear of physical and economic harm on other members of Local 82 and on various business entities in and around Boston in order to generate money for themselves, family members and friends. Id. ¶ 8. The indictment alleges numerous acts of extortion and violence, including the assault of John Doe A, a critic of Perry; the assault of John Doe B, who filed a grievance of Local 82; the intimidation of John Doe C for having appeared as a witness in a judicial proceeding and the stationing of Defendants and a police officer at the entrance of the union hall to prevent certain members of Local 82 from voting on a proposed contract ratification with a major employer. Id.

## B.   Racketeering Acts 12-16 and Counts 14-19

The Court dispenses with a discussion of many of the individual racketeering acts and counts alleged in the indictment, as many of the racketeering acts and counts alleged do not bear on the disposition of the instant motions.

Racketeering Act 12 and Counts 14 and 15 allege a conspiracy to manipulate the vote over a contract ratification affecting members of Local 82. D. 1 at 15, 35-37. Specifically, Defendants are alleged to have arbitrarily denied union members the right to attend meetings and vote on the ratification of a 2009 trade show collective bargaining agreement through the

wrongful use of actual and threatened force and fear of economic and physical harm so that Local 82 would approve a contract that would benefit Defendants, their friends and family members. Id. at 15-16.

Racketeering Act 13 and Count 16 allege that Burhoe interfered with Local 82 members and John Doe A's right to the election of union candidates of their choice through the wrongful use of actual and threatened force. Id. at 16-17, 38.

Racketeering Act 14 and Count 17 allege that Perry and Burhoe interfered with John Doe A's right to institute a judicial action in court and to appear as a witness free of any limitation by Local 82 or its agents in a judicial proceeding involving assault and battery charges against Burhoe. Id. at 18-19, 39-40.

Racketeering Act 15 and Count 18 alleges that Perry interfered with John Doe B's right to file a grievance through the wrongful use of actual and threatened force. Id. at 19, 41.

Racketeering Act 16 and Count 19 alleges that Perry and Burhoe interfered with John Doe C's right to express views and opinions on Local 82 affairs and appear as a witness in a judicial proceedings involving assault and battery charges against Perry. Id. at 20-21, 42.

Relative to each of the foregoing allegations, the government alleges that Defendants obtained and attempted to obtain property of the members of Local 82 including wages and employee benefits which Local 82 members would have obtained but for the Defendants' wrongful conduct. Id. at 15-21, 35-42.

## C. Mail Fraud and Theft of Government Property (Counts 20-28 and 30)

The indictment also charges a second grouping of counts charging three defendants, Burhoe, Deamicis and Flaherty, individually, with various counts of mail fraud for making false statements in connection with unemployment insurance claims. As alleged, these defendants,

while working as members of Local 82, falsely reported their earnings and fraudulently obtained overpayments of unemployment insurance.  D. 1 at 44-53.

In Count 30, Deamicis is charged with theft of government property in the nature of "extended benefits" and Federal Additional Compensation of a value in excess of $1000.  D. 1 at 54.

### D.  Prohibition Against Certain Persons Holding Office (Count 29)

Count 29 sounds against both Burhoe and Perry.  This count alleges that Burhoe, having been previously convicted of a crime, was disqualified from serving as a consultant, advisor or as a representative in any labor organization, and that he did so willfully serve in such capacity for Local 82 and that Perry, as Secretary-Treasurer and principal officer of Local 82, did knowingly and willfully permit such service, all in violation of 29 U.S.C. § 504.  D. 1 at 52-53.

## III.   Procedural History

The grand jury in this matter returned the indictment on September 13, 2012.  D. 1. Defendants have now moved to dismiss the aforementioned counts and racketeering acts.  D. 174.  Burhoe moved to sever and, on behalf of all of the defendants, also moved for the early production of Jencks material, D. 175, 176, and Flaherty and Deamicis subsequently moved to sever.  D. 180, 182.  (Perry joined the severance motions orally at the motion hearing, D. 206 at 59-60).  The Court heard oral argument on the motions on June 11, 2014 and took these matters under advisement.  D. 200.

## IV.   Discussion

### A.    Motion to Dismiss

Defendants challenging the sufficiency of an indictment bear a heavy burden.   United States v. Troy, 618 F.3d 27, 34 (1st Cir. 2010).  "A court should exercise its authority to dismiss cautiously, since to dismiss an indictment 'directly encroaches upon the fundamental role of the

grand jury.'" United States v. Thomas, 519 F. Supp. 2d 141, 143-44 (D. Me. 2007) (quoting Whitehouse v. U.S. Dist. Court, 53 F.3d 1349, 1360 (1st Cir. 1995)). Courts generally deem an indictment sufficient if it "describes all of the elements of the charged offense using the words of the relevant criminal statute." United States v. Wells, 766 F.2d 12, 22 (1st Cir. 1985) (citing Hamling v. United States, 418 U.S. 87, 117 (1974)). An indictment need only give notice of the charges to the defendant. United States v. Brown, 295 F.3d 152, 154 (1st Cir. 2002). Indictments need not plead the elements of the offense with "infinit[e] specific[ity], especially when "charging papers contain[] considerable contextual detail." United States v. Sepulveda, 15 F.3d 1161, 1192 (1st Cir. 1993).

### 1. Background

The thrust of Defendants' argument is that Racketeering Acts 12-16 and Counts 14-19 of the Indictment do not allege that Defendants obtained or attempted to obtain property under the Hobbs Act, 18 U.S.C. § 1951(b)(2) (defining "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right"). D. 174 at 1. They base this argument on a recent Supreme Court case, Sekhar v. United States, --- U.S. ---, 133 S. Ct. 2720 (2013), and a prior case, Scheidler v. National Organization for Women, 537 U.S. 393, 404 (2003). In both of these cases, the Supreme Court found that there had been no extortion where the defendants had not obtained any property from the victims.

District courts and courts of appeal in other jurisdictions have concluded that "LMRDA rights can constitute extortable property under the Hobbs Act, notwithstanding the fact that LMRDA rights cannot be legally exercised by third parties." United States v. Gotti, 459 F.3d 296, 325 (2d Cir. 2006) (collecting cases); see also United States v. Debs, 949 F.2d 199, 201 (6th

Cir. 1991) (concluding that "intangible business rights, including business rights of unions" are extortable property); United States v. Local 560 of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, & Helpers of Am., 780 F.2d 267, 281-82 (3d Cir. 1985) (concluding that the "intangible property right to democratic participation in the affairs of [a] union . . . [is] extortable 'property' for purposes of the Hobbs Act").

In United States v. Tropiano, 418 F.2d 1069 (2d Cir. 1969), cert. denied, 397 U.S. 1021 (1970), the Second Circuit affirmed the conviction of defendants who were engaged in the refuse removal business and who by means of threats, convinced a rival to cease doing business in a certain area. Id. at 1071. The Second Circuit affirmed the convictions, concluding that such "intangible" property may be property extorted under the Hobbs Act. Id. at 1076.

In Local 560, the defendants were alleged to have extorted union members' rights to participate in the union's democratic process, whereby "the membership did not feel free to criticize openly the policies and practices of the Local 560 leadership (and, thus, were fearful of exercising their union democratic rights)" based upon the fear of actual and threatened force by the union's leadership. Local 560, 780 F.2d at 278. In affirming the district court's finding of civil Hobbs Act and RICO liability, the Third Circuit concluded that intangible property can be the subject of a Hobbs Act extortion. Id. at 281-82.

In Debs, a union's local president was indicted for inducing another member not to oppose him in a local election. Debs, 949 F.2d at 200. The defendant argued that "loss of the opportunity to nominate, vote, assemble, and speak is a deprivation of rights rather than property." Id. at 201 (emphasis in original). After being convicted, however, the Sixth Circuit affirmed the conviction, concluding that "LMRDA rights are property under the Hobbs Act." Id. at 202.

Two recent Supreme Court cases have addressed a similar question – whether intangible rights can be property "obtained" for the purposes of the Hobbs Act. In <u>Scheidler v. Nat'l Org. for Women, Inc.</u>, 537 U.S. 393 (2003), the defendants were alleged to have engaged in a nationwide conspiracy to shut down abortion clinics. <u>Id.</u> at 398. The Supreme Court held that the property rights that the defendants caused the plaintiffs to give up – the ability to operate clinics absent disruption – did not amount to property under the Hobbs Act. <u>Id.</u> at 404-05. The Court focused on the fact that:

> [E]ven when their acts of interference and disruption achieved their ultimate goal of "shutting down" a clinic that performed abortions, such acts did not constitute extortion because petitioners did not "obtain" respondents' property. Petitioners may have deprived or sought to deprive respondents of their alleged property right of exclusive control of their business assets, but they did not acquire any such property. Petitioners neither pursued nor received "something of value from" respondents that they could exercise, transfer, or sell. To conclude that such actions constituted extortion would effectively discard the statutory requirement that property must be obtained from another, replacing it instead with the notion that merely interfering with or depriving someone of property is sufficient to constitute extortion.

<u>Id.</u> at 404-05 (citation omitted). The Court also noted in a footnote that this decision did not "reach[], much less reject[], lower court decisions such as [<u>Tropiano</u>], in which the Second Circuit concluded that the intangible right to solicit refuse collection accounts 'constituted property within the Hobbs Act definition.'" <u>Id.</u> at 402 n. 6.

The Second Circuit decided <u>Gotti</u> three years later, distinguishing <u>Scheidler</u>, which the Second Circuit held "clarified that for Hobbs Act liability to attach, there must be a showing that the defendant did not merely seek to deprive the victim of the property right in question, but also sought to obtain that right for himself." <u>Gotti</u>, 459 F.3d at 300. In <u>Gotti</u>, the Second Circuit found a variety of conduct violative of the Hobbs Act based on a single principle: that intangible property is within the ambit of the Hobbs Act as long as the defendant is alleged to have carried out the deprivation of that property "with the intent to exercise, sell, transfer, or take some other

analogous action with respect to that right. A motive ultimately to profit by cashing out the value of the property right will generally serve as powerful evidence that the defendant's goal was to obtain the right for himself, rather than merely to deprive the victim of that right." Id. at 324-25.

Last year, the Supreme Court decided Sekhar, in which the court concluded that the defendant's threats to the general counsel of the New York state employee pension fund, forcing the general counsel to advise the pension fund's comptroller to invest in another fund managed by the defendant did not amount to extortion, where neither "the General Counsel's recommendation to approve the Commitment" nor the general counsel's "intangible property right to give his disinterested legal opinion to his client free of improper outside interference" were extortable property. Sekhar, 133 S. Ct. at 2727 (citation omitted). Distinguishing extortion from coercion, the court noted that "[n]o fluent speaker of English would say that 'petitioner *obtained and exercised* the general counsel's right to make a recommendation,' any more than he would say that a person '*obtained and exercised* another's right to free speech.' He would say that 'petitioner *forced* the general counsel to make a particular recommendation,' just as he would say that a person '*forced* another to make a statement.'" Id. (emphasis in original). Concurring in the judgment, Justice Alito concluded that had the indictment alleged that the defendant attempted to obtain the general counsel's job, his labor as a lawyer, his law license or his reputation, this might rise to the level of obtainable property, but the indictment did not allege same. Id. at 2730 (Alito, J., concurring).

2. *Racketeering Acts 12-13 and Counts 14-16 Allege that Defendants Extorted Obtainable Property*

As discussed above, the challenged racketeering acts and counts of the Indictment here allege that Defendants (1) conspired to manipulate a vote on the ratification of a contract, D. 1 at

15, 35-37; (2) interfered with Local 82 members and John Doe A's right to the election of union candidates of their choice, id. at 16-17, 38; (3) interfered with John Doe A's right to institute a judicial action in court and to appear as a witness free of any limitation in a judicial proceeding involving assault and battery charges against Burhoe, id. at 18, 39; (4) interfered with John Doe B's right to file a grievance with the union, id. at 19, 41; and (5) interfered with John Doe C's right to express views and opinions on Local 82 affairs and appear as a witness in a judicial proceedings involving assault and battery charges against Perry, id. at 20, 42. As each of these allegations bear upon the rights of union members under the LMRDA, under the formulation of several courts of appeal, see Debs, 949 F.2d at 202; Local 560, 780 F.2d at 281-82; Tropiano, 418 F.2d at 1076, the indictment here alleges that Defendants attempted or did "obtain" "property" as contemplated by the Hobbs Act. The question is whether these cases are still good law in light of the Supreme Court's recent decisions. The Defendants contend that they are not.

However, in Scheidler, the court made mention of the defendants' "ultimate goal," which it acknowledged was to "shut down" a number of abortion clinics. Scheidler, 537 U.S. at 405. By accomplishing this, the court stated, the defendants did not obtain a property right. The court's decision in Sekhar did undermine its prior formulation, noting that "[t]his case is easier than Scheidler, where one might at least have said that physical occupation of property amounted to obtaining that property," Sekhar, 133 S. Ct. at 2726, and indeed, the earlier Second Circuit decision in Gotti relied on the Supreme Court's reference of defendants' "ultimate goal," reading the Supreme Court's "emphasis on the possibility of exercising, transferring, or selling the property as a concern with the extortionist's *intent* with respect to the property at issue." Gotti, 459 F.3d at 323 (emphasis in original). Moreover, as the government notes, "neither Scheidler

nor <u>Sekhar</u> dealt with the LMRDA," as the line of the Circuit cases discussed above have.  D. 190 at 5.

Defendants' alleged manipulation of Local 82's vote to ratify a 2009 collective bargaining agreement, as alleged conduct in Racketeering Act 12 and Counts 14 and 15, was, in the government's estimation, aimed at approving a contract "that would be beneficial to the defendants, their friends and family members."  D. 1 at 16.  Accordingly, with respect to these counts and racketeering acts, the government alleges that Defendants deprived union members of voting rights and used them for themselves to further their personal gain.  That is, the government has made sufficient allegations as to the elements of extortion.

By the same logic, Racketeering Act 13 and Count 16 sufficiently allege the elements of extortion.  Burhoe's alleged interference with Local 82 members' right to democratic participation in the affairs of Local 82 caused these members to lose their right to support the candidates of their choice, which Burhoe used to promote the Perry Crew's candidates.  In this way, the government alleges that Burhoe deprived Local 82 members of these rights and used them for his own gain and to the advantage of the Perry Crew.  Certainly, the facts alleged here are closer to the facts alleged in <u>Tropiano</u>, as opposed to <u>Sekhar</u> or <u>Scheidler</u>, which the Supreme Court noted that it was not reaching in <u>Scheidler</u>.  <u>Scheidler</u>, 537 U.S. at 402 & n. 6 (noting that "the dissent is mistaken to suggest that our decision reaches, much less rejects, lower court decisions such as <u>United States v. Tropiano</u>, 418 F.2d 1069, 1076 ([2d Cir.] 1969) in which the Second Circuit concluded that the intangible right to solicit refuse collection accounts 'constituted property within the Hobbs Act definition'").

Defendants cite <u>United States v. Larson</u>, No. 07-CR-304S, 2013 WL 5573046 (W.D.N.Y. Oct. 9, 2013) for the proposition that <u>Gotti</u> does not survive <u>Sekhar</u>.  D. 174 at 11 n.2; <u>see</u>

Larson, 2013 WL 5573046, at *6. In Larson, the government alleged, *inter alia*, that the defendants, who were also members of a union, attempted to force construction employers to hire union members for their projects. Id. at *1. Specifically, the property that defendants allegedly attempted to gain there were wages and benefits to be paid by contractors under labor contracts with the unions; jobs being performed by non-union laborers; the right for contractors and businesses to make business decisions free from outside pressure; and wages and benefits to be paid by construction contractors to be paid for unwanted, unnecessary and superfluous work. Id. at *4. The defendants there alleged that these categories all arose from the same "core accusation: that "the defendants sought to deprive contractors of the right to make business decisions free from outside pressure." Id. The Larson court concluded that, post-Sekhar, the first two categories, namely "jobs and pay" remained obtainable property for the purposes of the Hobbs act (and it need not resolve the fourth category), but that the third category, right to make business decisions was not obtainable property subject to the Hobbs Act. Id. at *6-7. Larson is not binding on this Court, but it is also distinguishable where, as to the voting rights here, the Defendants here could effectively acquire the voting rights of members of Local 82 to further their own interests by usurping the members' right to vote to ratify the contract with the intent to effect action (namely, ratification) for their own benefit.

### 3. Allegations in Racketeering Acts 14-16 and Counts 17-19

It is perhaps a closer call whether certain allegations in Racketeering Acts 14-16 and Counts 17-19, that relate to "the rights of Local 82 members to democratic participation in the affairs of their labor organization as guaranteed by the LMRDA," see, e.g., D. 1 at 18, constitute "obtainable" property under the post-Sekhar. Specifically, this subset of allegations include whether certain of the Defendants interfered with John Doe A's right to institute a judicial action, John Doe B's right to file a union grievance and John Doe C's right to appear as a witness in

judicial proceedings against Perry. Certainly these amount to intangible rights under the LMRDA, but the Defendants contend that none of them amounts to "obtainable" or "transferable" property rights. Sekhar, 133 S. Ct. at 2725. Although the Court has concluded, as discussed above, how members of the Perry Crew could "obtain" members' voting rights, it is less apparent how the Defendants could "obtain" John Doe A's right to institute a judicial action, John Doe B's right to file a union grievance or John Doe C's right to appear as a witness. Under the formulation in Gotti, post-Scheidler, but pre-Sekhar, it remains that such LMRDA rights were obtainable property in that the "defendants caused the relinquishment of the union members' LMRDA rights, but also that the defendants did so in order to exercise those rights for themselves—indeed, in a way that would profit them financially." Gotti, 459 F.3d at 325. That is, that their actions constituted both deprivation and effective acquisition of even these intangible goods. All of these properties have in common that they constitute union employee rights arising under the LMRDA rights, which under a long line of cases have been ruled to constitute property under the Hobbs Act, a line of cases that the Supreme Court explicitly noted in Scheidler that it was not reaching or rejecting.

Moreover, the government also alleges in each of these counts and racketeering acts that Defendants obtained and attempted to obtain wages and benefits through their wrongful conduct. D. 1 at 15-21, 35-43. Defendants do not seriously contest that wages and benefits, generally, are obtainable property subject to the Hobbs Act, as even in the Court in Larson, upon which they rely in part, concluded. Instead, they argue that as to wages, "the government has acknowledged that 'no benefits were paid' in connection with the alleged extortion of union members," D. 174 at 11. The Defendants concluded that the deprivation meant that they were from non-union companies (which would not pay benefits) as opposed to ones subject to

collective bargaining agreements (which would pay benefits).  D. 197 at 6; D. 174 at 11-12.

Accordingly, the Defendants argue as to this set of charges, the indictment (as supplemented

through an earlier bill of particulars) fails to identify wages that union members lost and that the

Defendants obtained for the purposes of obtainable property under Sekhar.  While it may be true

that the crux of these counts is the deprivation of such wages, and putting aside whether the

government's theory that such wages were wages that members of the Local 82 would have been

entitled to is a new theory of culpability, as articulated in the government's opposition, D. 190 at

17 and what may be characterized as a further bill of particulars (letter filed June 11, 2014, D.

201) regarding the union members denied work with certain companies and awarded to others,

the Court's inquiry at this stage is to examine whether the indictment "describes all the elements

of the charged offense using the words of the relevant criminal statute," Wells, 766 F.3d at 22,

which it does under the LMRDA theory explained above.  For all these reasons, the Court

DENIES the motion to dismiss the Indictment.[1]

B.    **Motion to Sever**

The Defendants have moved to sever pursuant to Fed. R. Crim. P. 8(a) and 14(a).

Severance in criminal cases, particularly in conspiracy cases, is "especially disfavored."  United

States v. Celestin, 612 F.3d 14, 19 (1st Cir. 2010) (citation omitted).  "There is a preference in

the federal system for joint trials of defendants who are indicted together" because "they promote

efficiency and serve the interests of justice by avoiding . . . the inequity of inconsistent verdicts."

---

[1] To the extent that the motion to dismiss seeks other relief, namely a bill of particulars as to Racketeering Acts 12-16 and Counts 14-19, D. 174 at 12-13, the Court DENIES that request WITHOUT PREJUDICE.  Even considering the complexity of the charges and the language of the indictment as to those Racketeering Acts and Counts, the Court cannot say on the record currently before it that the elements of those counts or the nature of the charges have not been elucidated, particularly in light of the discovery produced by the government, including the letter filed June 11, 2014, D. 201-202,  and the charges in the indictment.  D. 190 at 17.  The Court, however, did indicate at the June 11th hearing to counsel to Burhoe that any motion for a bill of particulars could follow the Court's resolution of the pending motions. D. 206 at 63-64.  If, in light of this ruling, the Defendants seek further action as to this point (that is not captured in the newly filed motion to continue the trial date, D. 211 at 5), they must file any such request by August 7, 2014.

<u>Zafiro v. United States</u>, 506 U.S. 534, 537 (1993) (internal quotation marks and citation omitted).

That said, upon the Defendants' motions, the Court must consider whether the counts in the

indictment are properly joined under Fed. R. Crim. P. 8(a) and, even if they are properly joined,

whether such joinder prejudices the Defendants. <u>Id.</u> at 538.

Federal Rule of Criminal Procedure 8(a) provides that:

**(a) Joinder of Offenses.** Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, [1] are of the same or similar character or [2] are based on the same act or transaction or [3] on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

The remedy for misjoinder is severance. <u>United States v. Natanel</u>, 938 F.2d 302, 306 (1st Cir.

1991). Even as Rule 8(a) is "generously construed in favor of joinder, . . . in part because Fed.

R. Crim. P. 14 provides a separate layer of protection where it is most needed." <u>United States v.</u>

<u>Randazzo</u>, 80 F.3d 623, 627 (1st Cir. 1996) (citation omitted). That is, even if offenses are

properly joined, severance may be warranted under Fed. R. Crim. P. 14(a) if joinder would

prejudice a defendant:

If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a). A defendant must still make a strong showing of prejudice. <u>United</u>

<u>States v. Richardson</u>, 515 F.3d 74, 81 (1st Cir. 2008). Accordingly, severance, if there is proper

joinder under Rule 8 for defendants, is warranted under Rule 14 "only if there is a serious risk

that a joint trial would compromise a specific trial right of one of the defendants, or prevent the

jury from making a reliable judgment about guilt or innocence." <u>Zafiro</u>, 506 U.S. at 539. The

Court must also "weigh the prejudice resulting from a single trial of counts against the expense

and inconvenience of separate trials." <u>Buchanan</u>, 930 F. Supp. at 667. Rule 8(a) analysis

focuses on the nature of the charges and alleged facts and their similarity and commonality and Rule 14(a) analysis focuses upon whether joinder, even if it satisfies the Rule 8(a) analysis for joinder, would prejudice the defendant.

Burhoe argues that Counts 20-22, which charge Burhoe individually with mail fraud and Count 29, which charges Burhoe with holding office in a labor organization despite having been convicted of a crime, should each severed from a trial on Counts 1-19. D. 175. Flaherty similarly argues that Counts 26-28, which charge him with mail fraud and Counts 29 and 30 (Count 30 charges Deamicis with theft of government property) should be severed from a trial on Counts 1-19. D. 180. Deamicis also argues that Counts 23-25, which charge him individually with mail fraud and Count 30 should be severed from a trial on Counts 1-19. D. 182. The Court shall address whether such counts are properly joined under Rule 8(a) and then, whether properly joined, such joinder is prejudicial to the Defendants.

### 1.    *Counts 20-28 and 30 Are Not Properly Joined with Counts 1-19 and 29*

Defendants argue that Counts 20-28 (the "mail fraud counts"), Count 29 and Count 30 should be severed from Counts 1-19 (racketeering and extortion counts) because they fail any of the standards for joinder.

#### a.    Same or Similar Character

Two or more counts may be joined if they are of "same or similar character." Fed. R. Crim. P. 8(a). The "same or similar character" allows similar conduct to be charged together, but cannot be stretched beyond logical limits. Compare United States v. Windom, 19 F.3d 1190, 1195 (7th Cir.), cert. denied, 513 U.S. 862 (1994) (concluding that multiple counts of possession with intent to distribute heroin and cocaine were properly joined, because the crimes are of the same character) with Randazzo, 80 F.3d at 628 (concluding that to charge "adulterating or mislabeling shrimp [with] tax fraud [would require] a level of generality so high as to drain the

term of any real content").  In addition, it "must be narrowly applied to situations where permitting joinder will not lead to the sort of prejudice addressed in Rule 404(b) of the Federal Rules of Evidence."  United States v. Buchanan, 930 F. Supp. 657, 665 (D. Mass. 1996) (concluding that two different fraudulent schemes were not of "same or similar character").  That is, the "same or similar character" standard for joinder has been described as the "lower end of the range" for joinder where the line between proper joinder and misjoinder may be closest.  See Buchanan, 930 F. Supp. at 665 (citing Randazzo, 80 F.3d at 627-28).

Even with this characterization of this standard, the racketeering and extortion scheme varies significantly in character from the mail fraud charges.  The respective groups of counts arise under different statutes, involve different victims and different alleged modus operandi. The victims of the extortion and racketeering enterprises were private individuals, either other members of Local 82 or companies engaging laborers, while the victim of the mail fraud charges and the theft of public money as charged in Count 30 was the government, from which the defendants illegally obtained unemployment benefits or stole government property.  Similarly, although Burhoe's alleged unlawful service as an officer of Local 82 (Count 29) does bear upon his ability and motivations to participate in the extortion and racketeering (as discussed below), there is no close logical connection between Count 29 and the mail fraud that Defendants (other than Perry) allegedly perpetrated on the Commonwealth.  In addition, each of these sets of charges (Counts 1-19 and 29, the extortion and racketeering charges and the prohibited position count) "are not admissible to any other set [for mail fraud and theft of government property] under Rule 404(b), for instance, to show plan, opportunity, knowledge or motive,"  Buchanan, 930 F. Supp. at 667, or without running afoul of Rule 403.  Accordingly, Court concludes that Counts 1-19 and 29 are not of the same character as Counts 20-28 and 30.

b. Same Act or Transaction

Joinder is proper under this Rule 8(a) prong where there is a sufficient link between separate substantive offenses. <u>United States v. Luna</u>, 585 F.2d 1, 4 (1st Cir. 1978) (noting that a conspiracy count was a "sufficient connecting link" to substantive offense); <u>United States v. Gorecki</u>, 813 F.2d 40, 42 (3d Cir. 1987) (finding proper joinder of firearm and narcotics counts where "the firearm and the narcotics-related evidence were found on the same premises, at the same time, as a result of the same legal search"). Here, the mail fraud counts, the racketeering and extortion counts, the theft of public money count and the unlawful service as a union officer count each allege discrete acts that were part of separate transactions. Accordingly, joinder is not proper on this ground.

c. Common Scheme or Plan

"Joinder is proper under the 'common scheme or plan' prong of 8(a) when 'one illegal activity provides the impetus for the other illegal activity.'" <u>United States v. George</u>, No. 03-10091-PBS, 2004 WL 746282, at *2 (D. Mass. Apr. 6, 2004) (quoting <u>United States v. Dominguez</u>, 226 F.3d 1235, 1239 (11th Cir. 2000) (concluding that joinder of drug-related and mortgage fraud claims was proper where the government alleged that when applying for a mortgage, the defendant provided fraudulent tax returns to a bank to conceal the illicit source of his income); <u>United States v. Whitworth</u>, 856 F.2d 1268, 1277 (9th Cir.1988) (concluding that joinder of espionage and tax evasion charges was proper because the money was "received in exchange for classified information was the same as that involved in the tax charges")).

This is not the case here as between the mail fraud and theft charges and the extortion and racketeering charges. The mail fraud counts allege a scheme separate from the racketeering conspiracy and extortions alleged in Counts 1-19. The Perry Crew's alleged manipulation and

control of Local 82 is not alleged to have caused or been the impetus for Defendants' individual alleged schemes to wrongfully acquire unemployment assistance. The government argues that "[t]he very reason that the defendants were not entitled to unemployment insurance was because they were collecting payments while working as members of Local 82." D. 191 at 7-8. But even by the government's own formulation of the material misrepresentations at the core of the mail fraud claims--first, that the defendants made false representations that they were not working in the benefits applications and, second, when endorsing the benefit checks they received, they certified under penalties of perjury that they had no earnings from an employer during the same time period, D. 191 at 7--neither concerns evidence of the extortionate means and methods alleged in the first set of charges even as such acts may have occurred during the same time period (broadly speaking, as the racketeering and racketeering conspiracy charged in Counts I and II and the extortion conspiracy charged in Count III are all alleged to have occurred in 2007 through 2011 and mail fraud counts concern alleged criminal conduct on various, specific dates in 2009, 2010 and 2011) and during the time that the Defendants were part of Local 82. The same is true as to Count 30 for theft of government property alleged against Deamicis. That is, the connective tissue between the racketeering and extortion counts and the mail fraud and theft of government property counts is therefore insufficient to warrant joinder on this basis.

As discussed above, however, there is a clear connection between Deamicis's theft of public money (Count 30) and the mail fraud counts; and, as discussed further below, between Burhoe's alleged unlawful service as a representative of Local 82 (Count 29) and the racketeering and extortion charges. Accordingly, the Court concludes that joinder of Counts 1-19 and 29 is proper, but that Counts 20-28 and 30 may be joined together, but not with Counts 1-19 and 29.

2. *Joinder of Counts 1-19 and 29 with Counts 20-28 and 30 Would be Prejudicial to the Defendants*

In light of the Court's determination as to joinder, the Court does not need to reach many of the arguments made by both the government and Defendants as to prejudice. The Court concludes, however, that joinder of Counts 1-19 with 29 is not prejudicial to the Defendants, but joinder with the other Counts, Counts 20-28 (the mail fraud counts) and Count 30 (the theft of government property), would be prejudicial.

In the context of joinder of offenses, prejudice to the defendants may emerge in a number of ways:

> (1) the defendant may become embarrassed, or confounded in presenting separate defenses; (2) proof that defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissible in a separate trial for the second offense; and (3) a defendant may wish to testify in his own behalf on one of the offenses but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither.

United States v. Scivola, 766 F.2d 37, 41-42 (1st Cir. 1985) (citation omitted). The Defendants focus on the second category of likely prejudice for joinder of the extortion and racketeering charges to the other mail fraud and theft charges, namely that evidence, or guilt if proved, of the latter category will be used by the jury as evidence of guilty of the conspiracy to commit the first category of charges, or would amount to "propensity" evidence (i.e., proof that they more likely committed the extortion and racketeering charges because of guilt on other charges) that is barred under Fed. R. Evid. 404(b)(1). The Court agrees that such risk is presented on the particular facts and circumstances of this case, particularly given that the factual allegations supporting the separate set of counts is distinct. This is not a case in which "the same evidence would be admissible in both trials if the counts were severed." United States v. DeLeon, No. 07-10277-NMG, 2008 WL 4610292, at *2 (D. Mass. Oct. 16, 2008). Moreover, although the Court can and will instruct the jury about the government's separate burden of proof as to each count

and can provide limiting instructions about the jury's consideration of certain evidence, given the complexity of the extortion and racketeering charges here, there remains a serious risk of prejudice of the joinder of these two sets of counts.[2]

Count 29, however, stands in a different posture. As to this count, Burhoe argues that a trial on Count 29 would prejudice him on any other count, because a trial on Count 29 would include evidence that Burhoe had previously been convicted of a felony. D. 175 at 6. Different from the mail fraud and theft of government property counts, this charge is more inextricably tied to the extortion and racketeering scheme as it relates to the leadership and representation of the Local 82, which is at the heart of those charges. That is, Burhoe's role as a Local 82 representative enabled him to carry out extortion that is alleged against him and his co-defendants in the first set of counts. See D. 191 at 5-6. Moreover, under these circumstances, "[c]ourts, including the First Circuit, have routinely held that severance is not required so long as the parties stipulate to the fact of the felony and the Court gives the jury appropriate limiting instructions." United States v. Widi, No. 09-CR-9-P-S, 2010 WL 580005, at *2 (D. Me. Feb. 12, 2010) (citations omitted); see also United States v. Boulanger, 444 F.3d 76, 87-88 (1st Cir. 2006) (affirming district court's determination that severance was not warranted where the government presented evidence of a prior felony conviction). Burhoe also has the option of entering into a stipulation as to his prior conviction, see Old Chief v. United States, 519 U.S. 172, 178 (1997) (reversing district court's refusal to accept defendant's stipulation of prior felony), the Court can instruct the jury about the limits to which they can consider this evidence as only as an element of the government's burden of proof for Count 29 and can appropriately limit any prosecutorial

---

[2] The Court notes that Deamicis invokes the third category of risk of prejudice, contending that joinder of these sets of charges presents him "with an unwanted alternative of choosing between testifying as to all counts or foreclosing that right based solely upon the government's decision to pursue unrelated charges in one indictment." D. 182 at 4. The Court need not reach this issue in light of its conclusion above.

argument about the predicate conviction for this Count. The Court is therefore not persuaded that a trial of Count 29 with the extortion and racketeering charges would be prejudicial to Burhoe or any of the other Defendants.

Accordingly, the Court ALLOWS the motion to sever to the extent that Counts 1-19 and 29 are severed from Counts 20-28 and 30, but DENIES the motion to the extent that Defendants seek any further relief. Although judicial economy and conservation of prosecutorial resources are important concerns and the Court does not order separate trials lightly, the Court orders severance of the counts as explained and enumerated above. Trial on Counts 1-19 and 29 shall proceed as scheduled on September 8, 2014. Trial on the remaining counts will be scheduled at some time after first trial after further consultation with counsel about such scheduling.

###     C.     **Motion for Early Jencks**

To address the Defendants' motion for the early production of Jencks material, D. 176, the Court notes that the government has produced early Jencks materials since the filing of this motion. D. 208. Such production, made on July 11, 2014 and shortly thereafter, comes approximately two months before the trial set to begin on September 8, 2014. Id. To the extent that the defense motion sought early production of Jencks, that motion is now moot. Even if it were not, as the Court noted at the motion hearing, and as the government correctly notes, numerous courts have concluded that district courts cannot compel the early disclosure of Jencks material that neither does amount to Brady nor Giglio material. D. 192 at 2; see United States v. Owens, 933 F. Supp. 76, 80 (D. Mass. 1996) (citing United States v. Neal, 36 F.3d 1190, 1197 (1st Cir. 1994); United States v. Presser, 844 F.2d 1275, 1283 (6th Cir. 1988); United States v. Molt, 772 F.2d 366, 370 (7th Cir. 1985); United States v. Grandmont, 680 F.2d 867, 874 (1st Cir. 1982); Percevault, 490 F.2d at 129).

Although the Court strongly agrees with Defendants that early disclosure of Jencks material facilitates a more orderly trial, see United States v. Snell, 899 F. Supp. 17, 24 (D. Mass. 1995), such production has been made here. The Court will take up the Defendants' recently filed motion that, in part, concerns the government's production of certain discovery and whether the Jencks production evidences a failure to produce Brady and Giglio evidence in a timely fashion, D. 211, separately. For these reasons and the reasons noted on the record at the motion hearing, D. 206 at 62-63, the Court denies the motion for early Jencks production.

## V.     Conclusion

For the foregoing reasons, the Court DENIES the motion to dismiss, D. 174, ALLOWS IN PART and DENIES IN PART the motions to sever, D. 175, 180, 182, and DENIES the motion for early disclosure of Jencks material, D. 176.

**So ordered.**

/s/ Denise J. Casper
U.S. District Judge